**FILED**

NOV 2 0 1998

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civ. No. 98- *5109* |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| vs. | ) | |
| | ) | |
| HUNT BUILDING CORPORATION and | ) | |
| ELLSWORTH HOUSING LIMITED PARTNER- | ) | |
| SHIP, | ) | |
| Defendants. | ) | |

Plaintiff, the United States of America, through its undersigned counsel, for its complaint, alleges:

## I. INTRODUCTION

1. This is a civil action to recover damages and civil penalties, on behalf of the United States of America, arising from the false claims and false statements made or caused to be made by defendants to the Department of the Air Force, of the United States Department of Defense, for purposes of obtaining payment or approval for payment from the United States, in violation of the False Claims Act, 31 U.S.C. §§ 3729 -3733, as amended, and common law.

## II. JURISDICTION AND VENUE

2. The Court has jurisdiction over this action under 28 U.S.C. § 1345.

**1**

3.  Venue is proper in this District under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c), because defendants reside or are deemed to reside in this District and because the acts proscribed by Section 3729 occurred in this District.

### III. PARTIES

4.  Plaintiff is the United States of America, suing on its own behalf and on behalf of the Department of Defense and the Department of the Air Force, which are agencies and instrumentalities of the United States government, the operations of which are paid by funds from the United States Treasury.

5.  Defendant Hunt Building Corporation is incorporated under the laws of the State of Texas, and is located at 4401 North Mesa, Suite 201, Coventry Park West, El Paso, Texas 79902-1107.  Hunt Building Corporation is subject to this Court's jurisdiction.

6.  In 1991, Hunt Building Corporation succeeded to the rights, responsibilities, assets, and liabilities of Ellsworth Housing Corporation, a former South Dakota corporation formed by Hunt Building Corporation specifically for the purpose of constructing the Centennial Estates housing project.  Ellsworth Housing Corporation was wholly owned by Hunt Building Corporation.  Ellsworth Housing Corporation was merged into Hunt Building Corporation in 1991, following completion of the construction of the Centennial Estates housing project.  Due to the merger of Ellsworth Housing Corporation into Hunt Building Corporation and for convenience, Hunt Building Corporation and Ellsworth Housing Corporation will be collectively referred to as "Hunt Building Corporation" throughout this Complaint.

-2-

7.  Defendant Ellsworth Housing Limited Partnership is a South Dakota limited partnership that was registered in South Dakota on March 1, 1990.  Hunt Building Corporation is the general partner and owns a 99 percent interest in Ellsworth Housing Limited Partnership.

## IV.  FACTS

8.  On January 25, 1989, the Air Force issued a Request for Proposals for the construction of 828 new military family housing units at Ellsworth Air Force Base, South Dakota.  The Request for Proposals was issued pursuant to authority granted under Section 801 of the Fiscal Year 1984 Military Construction Authorization Act, Pub. L. No. 98-115 § 801, 97 Stat. 757, 782-83 (1983) (formerly codified at 10 U.S.C. § 2828).

9.  The Request for Proposals was a competitive procurement, soliciting developers to offer proposals for the design and construction of the Centennial Housing project, including all infrastructure, such as roads and utilities, at the developer's sole expense.

10.  The developer was to build the project on approximately 230 acres of land within the boundaries of Ellsworth Air Force Base, which would be leased to the developer for a term of forty years for the monetary consideration of $1.00.

11.  The Request for Proposals further required the developer to design, build, inspect, and own the housing units and other improvements and lease back the completed housing complex to the Air Force for a period of twenty years.

12.  In order to assist potential bidders in designing housing units appropriate for the soil conditions at the site, the Air Force provided with the Request for Proposals a report on the soils in the area available for development.  The report gave suggestions for general types of

foundation designs that would enable the housing units to withstand differential soil movement up to one inch, which proposers could adopt or reject as they saw fit.

13.   In its bid, Hunt Building Corporation proposed one of the foundation design types suggested in the report the Air Force had furnished with the Request for Proposals.

14.   The project included three senior officer's quarters, twenty-nine single-family units, thirty-six duplexes, and 181 four-plexes.

15.   The Air Force's monetary obligation was to begin upon accepting the units for occupancy under interim leases, at which time rental payments were to be made monthly to the developer.

16.   Upon acceptance, the Air Force was to become responsible for the maintenance on the units for the duration of the lease term, except for warranty items, latent defects, gross mistake, or fraud.

17.   On August 1, 1989, the Air Force awarded Contract No. F39601-92-L0002 to Hunt Building Corporation.

18.   The contractual agreement between Hunt Building Corporation and the Air Force consisted of the Land Lease, Lease Back, Agreement to Lease, Request for Proposals, Hunt Building Corporation's proposals, and Hunt Building Corporation's final plans and specifications.

19.   Under the Land Lease, executed on August 1, 1989, the United States leased approximately 230 acres of government-owned land inside the boundaries of Ellsworth Air Force Base for a period of forty years for the construction of a housing project.  The Land Lease further set forth the expectation that Hunt Building Corporation would provide housing units built in accordance with specific standards, referencing those contained in the Agreement to Lease.

20.  Under the Agreement to Lease, executed on August 1, 1989, the Air Force promised to lease housing units designed and built by Hunt Building Corporation, which Hunt Building Corporation promised to construct in accordance with specific standards.  The Agreement to Lease set forth the basic responsibilities of the parties with respect to the design and construction of the housing units.  It incorporated by reference and as exhibits the provisions and requirements of the Request for Proposals, Hunt Building Corporation's Quality Control Plan, Lease Back, Hunt Building Corporation's final plans and specifications for the project, and the Land Lease.

21.  The Lease Back was executed on December 30, 1991, following acceptance of the last phase of the housing project.  Under the Lease Back, the Air Force leased the housing units from Hunt Building Corporation for a term of twenty years, with an option for another twenty year term.  The Air Force's payments under the Lease Back were set at $8,166,000 per year for the entire complex, which included taxes and insurance.

22.  The Land Lease, Lease Back, and Agreement to Lease established Hunt Building Corporation's responsibilities and obligations in connection with the Centennial Estates housing project, including, but not limited to:

a.        Comply with national standards for construction, including the 1988 Uniform Building Code ("UBC"), 1988 Uniform Plumbing Code, 1988 Uniform Mechanical Code, 1987 National Electric Code, 1983 NEPA 101 Life Safety Code, Federal Manufactured Housing Construction and Safety Standards, and certain locally adopted codes listed in the Request for Proposals, Land Lease, and Hunt Building

Corporation's plans and specifications, as well as with all federal and state environmental laws.

b.   Develop and establish a comprehensive quality control program to ensure sufficient inspection and tests of all items of work to ensure conformance with all applicable codes and Hunt Building Corporation's plans and specifications, with respect to materials, workmanship, and finished product.

c.   Design housing units appropriate for the soil conditions at the site.

d.   Comply with the codes listed in paragraph a, above, in its construction, use, operation, maintenance, repairs, and replacement of buildings during the contract period, and with federal and state environmental laws.

e.   Design plans and specifications for the construction of the units.

f.   Warrant that the work performed under the contract conformed to the contract's requirements (including the Requests for Proposals, Hunt Building Corporation's plans and specifications, Hunt Building Corporation's Quality Control Plan, the Land Lease, the Agreement to Lease, and the Lease Back), and that the work was free of any defects in equipment, material, or design, or any workmanship performed by Hunt Building Corporation,  or any of its subcontractors or suppliers.

      g.    Remedy, at its expense, any failure to conform to contract requirements and any defects in the units, including defects in equipment, material, workmanship, or design, resulting from warranty items, latent defects, gross mistake, or fraud.

23.  Hunt Building Corporation submitted plans for the project that bore seals of registered architects and professional engineers.  Hunt also submitted specifications for the project, which consisted of detailed instructions regarding the materials and processes that were to be used in the construction.

24.  The Air Force reviewed the plans and specifications for its own benefit, but its review did not relieve Hunt Building Corporation of its contractual obligations.

25.  After being awarded the contract, Hunt Building Corporation attempted to substitute another foundation design for the one it had originally proposed.

26.  The Air Force ultimately required Hunt Building Corporation to use the foundation design it had originally proposed only after Hunt Building Corporation had failed to demonstrate that its proposed alternative would function at least equally to its original design.

27.  On March 28, 1990, just prior to the commencement of construction, Hunt Building Corporation assigned the Agreement to Lease to Ellsworth Housing Corporation.  Although Ellsworth Housing Corporation was the named entity then responsible for the construction of the project, it remained a wholly owned subsidiary of Hunt Building Corporation.  Hunt Building Corporation personnel were on-site, controlling all aspects of construction.

28.  During construction, Hunt Building Corporation was responsible for inspection and quality control on the project.  Pursuant to its contractual agreement with the Air Force, Hunt

-7-

Building Corporation submitted, on May 10, 1990, a comprehensive Quality Control Plan, which was intended to ensure compliance with applicable contract provisions, codes, plans, and specifications with respect to materials, workmanship, finished product, and proper performance of all of its subcontractors.

29. Under the Quality Control Plan, Hunt Building Corporation was required to provide a system for inspections and corrective actions for which it was responsible.

30. Hunt Building Corporation's Quality Control Plan also stated that authority for quality control would be vested in Hunt Building Corporation's Contractor's Quality Control Director, who would have full authority to control the quality of the work, including the ability to direct removal and/or replacement of defective work.

31. During construction, Hunt Building Corporation intentionally and knowingly failed to provide the quality control required by its contractual agreement with the Air Force and to comply with its Quality Control Plan in numerous respects including, but not limited to, the following:

  a. Hunt Building Corporation provided an insufficient number of inspectors on the construction site to keep up with the rapid pace of construction.

  b. Hunt Building Corporation's quality control inspectors lacked familiarity with the requirements of the contractual agreement between Hunt Building Corporation and the Air Force, applicable codes, or with Hunt Building Corporation's plans and specifications.

c. Hunt Building Corporation's quality control inspectors lacked sufficient training or experience to identify aspects of the construction that failed to comply with relevant codes.

d. Hunt Building Corporation's quality control inspectors failed to check the plans and specifications to ensure that they complied with applicable codes.

e. Hunt Building Corporation's quality control inspectors failed to check the actual construction of the units to determine if any aspects of the construction violated applicable codes or were not in compliance with Hunt Building Corporation's plans and specifications.

f. Hunt Building Corporation failed to implement procedures or requirements establishing a minimum level of detail or frequency of quality control inspections.

g. Hunt Building Corporation's quality control inspectors failed to conduct follow-up inspections of each feature of work on each housing unit.

h. Hunt Building Corporation's quality control inspectors failed to ensure that defective items noted in deficiency reports had been corrected before work proceeded.

i. Hunt Building Corporation's construction superintendent and other of its employees discouraged Hunt Building Corporation's quality control inspectors from filing deficiency documentation or other documents indicating the presence of defects in the houses.

j. Hunt Building Corporation's subcontractors lacked adequate quality

control programs or procedures.

   k.   Hunt Building Corporation's Contractor's Quality Control Director did not

have full authority to control the quality of the work.

32.  Hunt Building Corporation turned over the first phase of housing units to the Air

Force for occupancy on approximately December 11, 1990.

33.  The Air Force issued a Certificate of Acceptance for each phase of the project, which

Certificates contained an exception for latent defects, gross mistake, or fraud.

34.  Upon issuance of the Certificates of Acceptance, the parties executed interim leases

for each phase of the project.  The interim leases were executed on December 11, 1990; March 1,

1991; April 1, 1991; May 1, 1991; May 15, 1991; June 14, 1991; July 1, 1991 (two separate

interim leases executed on this date); July 15, 1991; and August 1, 1991.

35.  In each interim lease, Hunt Building Corporation certified that each unit that was the

subject of the interim lease was complete and ready for habitation; in compliance with applicable

health, safety, housing, building, and other codes, laws, and ordinances; would permit peaceful

and full occupancy; and were in substantial compliance with the requirements of the Agreement to

Lease.

36.  Contrary to the promises made in its Quality Control Plan, Hunt Building

Corporation's on-site project superintendent invariably chose speed of production and reduced

expense over quality of construction.

37.  Hunt Building Corporation completed the entire housing project in less than 500 days,

rather than the 1,440 days allowed under its contractual agreement with the Air Force.

38.  In order to finish the project in less than 500 days, Hunt Building Corporation

-10-

accelerated the pace of construction so excessively that subcontractors constructing the housing units were unable to comply with the construction requirements contained in Hunt Building Corporation's agreement with the Air Force and the subcontractors' agreements with Hunt Building Corporation.

39. Hunt Building Corporation's excessive speed of construction often deprived Hunt Building Corporation's quality control inspectors of the opportunity to determine if deficiencies existed or, if deficiencies had been identified, were corrected.

40. Hunt Building Corporation knowingly and with reckless disregard failed to perform adequate quality control inspections and corrections, as required under Hunt Building Corporation's contractual agreement with the Air Force.

41. As a result of Hunt Building Corporation's accelerated pace of construction and its failure to perform adequate quality control inspections and corrections, serious construction defects occurred in the housing units.

42. It was to Hunt Building Corporation's financial interest that the pace of construction be accelerated and quality control over the project be minimized.

43. Following the completion of construction, Hunt Building Corporation submitted to the Air Force as-built drawings on November 19, 1991, which purported to show the condition of the units as they had been constructed.

44. Hunt Building Corporation's as-built drawings were inaccurate in numerous respects.

45.  Pursuant to the contractual agreement between Hunt Building Corporation and the Air Force, Hunt Building Corporation was responsible for any warranty repairs on the units for one year following acceptance.

46.  On December 30, 1991, pursuant to an Assignment and Assumption Agreement, Hunt Building Corporation assigned all of its right, title, and interest in the Centennial Estates housing project to Ellsworth Housing Limited Partnership.  The assignment assigned all of Hunt Building Corporation's rights and obligations under its contractual agreement with the Air Force to Ellsworth Housing Limited Partnership.  As a result of the Assignment and Assumption Agreement, the Air Force became contractually obligated to make rental payments for the benefit of Ellsworth Housing Limited Partnership.

47.  On December 30, 1991, the Air Force executed an Acknowledgment and Consent, approving and accepting the assignment of Hunt Building Corporation's rights and obligations under its contractual agreement with the Air Force to Ellsworth Housing Limited Partnership.

48.  As of July 31, 1992, the Air Force had not yet discovered all of the defects present in the units.  Most of the defects that the Air Force had discovered had not been adequately addressed or repaired by Hunt Building Corporation prior to July 31, 1992,  and the parties agreed to preserve those items as warranty items.

49.  Under the contract, Hunt Building Corporation remains contractually liable for those defects that are latent or the result of gross mistake or fraud.

50.  By July 31, 1992, the housing units were becoming increasingly distressed.  The Air Force continued to demand that Hunt Building Corporation provide a solution to the increasing number of problems seen in the units, but Hunt Building Corporation failed and refused to act.

-12-

51.  The Centennial Estates housing project is burdened with significant design and construction defects.  The defects discovered in the units to date are substantial in nature and number, and the number continues to rise as further investigation proceeds.  These defects include, but are not limited to, the following:

a.  Lack of mandatory draft stops, fire stops, and fire-resistant construction, which make the units potentially unsafe for occupancy.

b.  Serious problems with the heating, ventilation, and air-conditioning system and ducting, which cause frigid and uninhabitable bedrooms during winter months.

c.  Absence of asphalt felt on roofs leads to rotting of roof decking and leaking into units, causing damage to the units and to the occupants' property, and other code violations that contribute to deterioration of the roofs.

d.  Missing or inaccessible mandatory sewer clean-outs result in costly and difficult maintenance of plumbing in the units.  In at least 11 cases, pipes were simply stuck into the ground to make it appear as if a clean-out had been installed.

e.  Defective windows and doors have never met air-infiltration standards and allow infiltration of dirt and moisture and create a loud whistling through the units that prevents conversation at normal levels.

f.  Snow infiltrates attics, which results in snow drifts in the attics and ceiling collapse.

-13-

g.   Concrete footings under porches and decks were installed at an impermissibly shallow depth, which results in shifting of the porches and decks, pulling away of stairs from decks, and creation of unlevel and unsafe conditions of porches and decks.

h.   Plumbing is either improperly vented or not vented at all, causing sewer gases to back up in some of the units.

i.   Improper design and construction of the units that cause racking, a condition in which the units are literally twisting and breaking apart in the high, sustained winds prevalent in western South Dakota.

j.   Defectively designed and constructed rim joists under the first floors of the units, which have caused unlevel floors, sticking windows and doors, and significant cracking of walls and ceilings.

k.   Serious framing defects, which undermine the structural integrity of the units, allow the units to break apart, and place the occupants at risk of potentially catastrophic failure.

l.   Cracked stem walls allow the infiltration of water into the units and are symptomatic of structural failure and improper design and construction.

m.   Improperly applied stucco results in cracking of the stucco finish, which allows water to infiltrate the units and which gives the units a shabby appearance.

52.   The defects in the Centennial Estates housing units that render the units uninhabitable and greatly reduced in value are latent or are the result of gross mistake or fraud.

-14-

53. The aforementioned defects are material and substantial to the extent that, had the Air Force known of them when it had to decide whether to accept the housing units, it would not have accepted the housing units and would not have made any rental payments pursuant to the contractual agreement with Hunt Building Corporation.

54. Hunt Building Corporation knew or should have know that the defects existed at the time it certified compliance with the terms of its contractual agreement with the Air Force.

55. As a result of the severe design and construction defects, the Air Force has declared approximately 460 units uninhabitable and believes that as many as 300 additional housing units may ultimately be declared unfit for occupancy.

56. The value of the Centennial Estates housing project is greatly reduced from that for which the Air Force bargained in its contractual arrangement with Hunt Building Corporation.

57. Hunt Building Corporation, Ellsworth Housing Limited Partnership, or both, have submitted to the Air Force for payment monthly invoices for rents due based upon the Air Force's occupancy of the Centennial Estates housing project units since December 1990. In all, Hunt Building Corporation, Ellsworth Housing Limited Partnership, or both, have submitted approximately 95 such invoices under the Lease Back.

58. Since approximately December 11, 1990, the Air Force has made rental payments under the Lease Back of approximately $60 million.

59. Since approximately December 11, 1990, the Air Force has paid approximately $8.4 million in rent under the Lease Back on uninhabitable units in the Centennial Estates housing project.

-15-

60. In addition to its rental payments pursuant to the Lease Back, the Air Force has been required to pay an additional approximately $7 million in excess off-base housing allowances to permit airmen and their families to live off base, which payments were caused directly by the uninhabitability of the units in the Centennial Estates housing project.

61. Since approximately December 11, 1990, the Air Force has been required to expend monies as a result of the design and construction deficiencies in the units caused by Hunt Building Corporation, including sums for investigating the cause of the housing units' distress, repairs, excess ground maintenance on unoccupied units, excess administrative housing costs, and occupant relocation.

62. The Air Force also expended approximately $41,000 cleaning up diesel fuel spilled from a Hunt Building Corporation storage tank on the original construction site.

63. The Air Force has estimated that it will be required to spend approximately $25 million on future repairs required to bring the Centennial Estates housing units in compliance with applicable codes and the terms of the contractual agreement between the Air Force and Hunt Building Corporation.

64. Because of the foregoing, plaintiff United States of America has been damaged.

### FIRST CLAIM FOR RELIEF
### False Claims Act, 31 U.S.C. § 3729(a)(1)

65. Plaintiff United States of America hereby incorporates by this reference the averments contained in Paragraphs 1 through 64.

66.  Since approximately December 11, 1990, Hunt Building Corporation, Ellsworth Housing Limited Partnership, or both, have submitted, or caused to be submitted, claims for payment or approval to the Air Force in the form of monthly invoices for lease payments.

67.  These claims were false or fraudulent by virtue of their implicit representation that Hunt Building Corporation had fulfilled its obligations under its contractual agreement with the Air Force to comply with all national construction standards, certain locally adopted codes (if more restrictive than national standards), and with its own plans and specifications.

68.  Hunt Building Corporation knowingly submitted these false or fraudulent claims. Hunt either had actual knowledge of the falsity of the claims, or acted with deliberate ignorance or reckless disregard of the truth or falsity of the claims.

69.  The United States, acting through the Department of Defense and the Department of the Air Force, unaware of the foregoing circumstances and the conduct of the defendants, and in reliance on the truth and accuracy of the claims for payment, authorized the payment of those claims and sustained damages because of defendants' acts in amounts to be determined at trial.

## SECOND CLAIM FOR RELIEF
### False Claims Act, 31 U.S.C. § 3729(a)(2)

70.  Plaintiff United States of America hereby incorporates by this reference the averments contained in Paragraphs 1 through 69.

71.  Hunt Building Corporation submitted records and statements in order to get claims paid or approved, in the form of as-built drawings and representations in the interim leases that the units were complete and ready for habitation; were in compliance with applicable health,

-17-

safety, housing, building, and other codes, laws, and ordinances; would permit peaceful and full occupancy; and were in substantial compliance with the requirements of the Agreement to Lease.

72.  These records and statements were false or fraudulent, in that the as-built drawings were inaccurate in numerous respects and the units were not complete and ready for habitation; were not in compliance with applicable codes, laws, and ordinances; would not permit peaceful and full occupancy; and were not in substantial compliance with the requirements of the Agreement to Lease.

73.  Hunt Building Corporation knowingly submitted these false records or statements to get its false or fraudulent claims paid or approved by the United States.  Hunt Building Corporation either had actual knowledge of the falsity of the records or statements, or acted with deliberate ignorance or reckless disregard of the truth or falsity of the representations contained in those records and statements.

74.  The United States, acting through the Department of Defense and the Department of the Air Force, unaware of the foregoing circumstances and the conduct of the defendants, and in reliance upon the truth and accuracy of the records and statements, occupied the units and authorized the payment of Hunt Building Corporation or Ellsworth Housing Limited Partnership's false or fraudulent claims and sustained damages because of defendants' acts in amounts to be determined at trial.

### THIRD CLAIM FOR RELIEF
### Breach of Contract (Pre-Construction)

75.  Plaintiff United States of America hereby incorporates by this reference the averments contained in Paragraphs 1 through 64.

-18-

76. Pursuant to the contractual agreement between the parties, Hunt Building Corporation bore sole responsibility for all aspects of the design of the units and for providing plans and specifications that complied with the requirements of the documents comprising the contractual agreement, including all relevant codes incorporated into the contractual agreement.

77. The final plan drawings submitted by Hunt Building Corporation to the Air Force prior to the commencement of construction certified that they complied with all contractual requirements.

78. Hunt Building Corporation's design of the units failed to comply with all relevant codes and other contract requirements.

79. Hunt Building Corporation's plan drawings failed to comply with relevant codes and further failed to comply with Hunt Building Corporation's own specifications for the Centennial Estates housing project.

80. As a result of Hunt Building Corporation's breach of its contractual obligations, Plaintiff United States of America, acting through the Department of Defense and the Department of the Air Force, did not receive the benefit of its bargain with Hunt Building Corporation.

81. As a direct and proximate result of the foregoing, Hunt Building Corporation breached its contract with the United States.

82. As a direct and proximate result of the foregoing breach of contract, the United States has been damaged in an amount to be determined at trial, including the United States' costs of investigation and repair.

-19-

**FOURTH CLAIM FOR RELIEF**
**Breach of Contract (During Construction and Post-Construction)**

83. Plaintiff United States of America hereby incorporates by this reference the averments contained in Paragraphs 1 through 64.

84. Hunt Building Corporation warranted that the work performed under the contract conformed to the contract's requirements (including the Request for Proposals, Hunt Building Corporation's plans and specifications, Hunt Building Corporation's Quality Control Plan, the Land Lease, the Agreement to Lease, and the Lease Back), and that the work was free of any defects in equipment, material, or design, or any workmanship performed by Hunt Building Corporation,  or any of its subcontractors or suppliers.

85. The Centennial Estates housing units, as constructed, fail to comply with requirements of the contract between Hunt Building Corporation and the Air Force in numerous respects, in that they fail to comply with all applicable codes incorporated into the contract and with Hunt Building Corporation's plans and specifications.

86. In August 1995, and, again, in October 1995, the Air Force notified Hunt Building Corporation of numerous defects in the Centennial Estates housing units, including code violations and other aspects that failed to conform to the requirements of the contractual agreement between the parties.  The Air Force directed Hunt Building Corporation to repair the units pursuant to Hunt Building Corporation's contractual obligation to repair, at Hunt Building Corporation's expense, any warranty items or items resulting from latent defects, gross mistakes, or fraud.

-20-

87.  Notwithstanding the Air Force's notices and directions to repair, Hunt Building Corporation has failed to repair the Centennial Estates housing units.

88.  As a result of the foregoing, Hunt Building Corporation breached its contract with the Air Force.

89.  As a direct and proximate result of the foregoing breach of contract, Plaintiff United States of America has been damaged in an amount to be determined at trial, including the United States' costs of investigation and repair.

**FIFTH CLAIM FOR RELIEF**
**Breach of Statutory Duty of Landlord or Implied Warranty of Habitability**

90.  Plaintiff United States of America hereby incorporates by this reference the averments contained in Paragraphs 1 through 64.

91.  The Air Force contracted with Hunt Building Corporation for the construction of new houses, to meet specific standards as set forth in the contract between the parties, to house Air Force personnel and their families stationed at Ellsworth Air Force Base.

92.  Hunt Building Corporation certified to the Air Force that the design and construction of the houses met these specific standards.

93.  The Centennial Estates housing units were not constructed in accordance with Hunt Building Corporation's plans and specifications or with the requirements of the contract.

94.  The houses, as designed and constructed, contain numerous substantial and material defects, including, but not limited to:  structural defects; framing defects; defects in the heating, ventilation, and air-conditioning systems; plumbing defects; substantial roof defects; defects in

-21-

the stucco that cause the units to have a shabby appearance; and defects affecting the safety of the occupants.

95.  As a result of the numerous substantial and material defects in the Centennial Estates housing units, the houses are not fit for human habitation and are not in good and safe working order, such that the housing units are not suitable residences for Air Force personnel.

96.  As a result of the foregoing, Hunt Building Corporation breached its duty, imposed by the South Dakota Codified Laws § 43-32-8, to keep the premises and all common areas in reasonable repair and fit for human habitation and in good and safe working order during the term of the lease, or its implied warranty of habitability under common law, or both.

97.  Plaintiff United States of America has been damaged as a direct and proximate result of Hunt Building Corporation's breach of its implied warranty of habitability in an amount to be determined at trial, including the United States' costs of investigation.

### SIXTH CLAIM FOR RELIEF
#### Common Law Fraud

98.  Plaintiff United States of America hereby incorporates by this reference the averments contained in Paragraphs 1 through 64.

99.  Hunt Building Corporation represented to the Air Force that its design and construction of the Centennial Estates housing units complied with all contractual requirements, including, but not limited to, compliance with relevant codes; Hunt Building Corporation's plans and specifications; and Hunt Building Corporation's Quality Control Plan.

100.  Hunt Building Corporation misrepresented to the Air Force that its plans and specifications complied with all contract requirements.

-22-

101. Hunt Building Corporation misrepresented to the Air Force that it had constructed the Centennial Estates housing units in accordance with all contract requirements.

102. Hunt Building Corporation misrepresented that it would implement a comprehensive Quality Control Plan.

103. Hunt Building Corporation's failure to comply with the provisions of its own Quality Control Plan and with the requirements of the contract resulted in Hunt Building Corporation's certifications of compliance being made with complete disregard for the truth of the representations.

104. Hunt Building Corporation had actual knowledge of the defects in the Centennial Estates housing units and that those defects had not been corrected when it certified compliance with the terms of the contract to the Air Force.

105. Hunt Building Corporation's misrepresentations, as set forth above, were material in the process of receiving rental payments.

106. Hunt Building Corporation made these misrepresentations in order to induce the Air Force to rely on its misrepresentations and make monthly rental payments under the terms of the Lease Back.

107. Plaintiff United States of America, acting through the Department of Defense and the Department of the Air Force, relied to its detriment upon Hunt Building Corporation's intentional misrepresentations of fact, and has made monthly rental payments to Hunt Building Corporation, Ellsworth Housing Limited Partnership, or both, based upon said reliance.

108. Plaintiff United States of America was injured as a direct and proximate result of Hunt Building Corporation's intentional misrepresentations of fact, as it would not have accepted

-23-

the units for occupancy or made the monthly rental payments had it know that Hunt Building Corporation's representations were untrue.

109.  By reason of the foregoing, Plaintiff United States of America has been injured in an amount to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**
**Unjust Enrichment**

110.  Plaintiff United States of America hereby incorporates by this reference the averments contained in Paragraphs 1 through 64.

111.  Plaintiff United States of America, acting through the Department of Defense and Department of the Air Force, has paid to Defendants monies by which they have been unjustly enriched.

112.  As a result of Hunt Building Corporation's unduly accelerated construction schedule and failure to comply with its contractually mandated quality control obligations, Hunt Building Corporation realized financial gain and provided defective housing units to the Air Force.

113.  Plaintiff United States of America, acting through the Department of Defense and the Department of the Air Force, made monthly rental payments to defendants totaling, at least, $60,000,000 (through November 1998) and made repairs to the leased facilities for which Hunt Building Corporation was responsible of at least $120,000, which has unjustly enriched Hunt Building Corporation at the expense of Plaintiff United States of America.

114.  By reason of these payments, Plaintiff United States of America is entitled to a return of a portion of such payments, in an amount to be determined at trial.

-24-

## EIGHTH CLAIM FOR RELIEF
### Negligence

115. Plaintiff United States of America hereby incorporates by this reference the averments contained in Paragraphs 1 through 64.

116. In designing and constructing the Centennial Estates housing units, Hunt Building Corporation was required to comply with the standard of a reasonably prudent contractor engaged in the construction of the housing units.

117. Hunt Building Corporation breached its duty of to conform to the applicable standard of care in numerous respects.

118. Hunt Building Corporation's breach of its duty to conform to the applicable standard of care proximately caused injury to the Plaintiff United States of America.

119. As a direct and proximate result of Hunt Building Corporation's breach of duty, Plaintiff United States of America has sustained damages in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF
### Payment by Mistake

120. Plaintiff United States of America hereby incorporates by this reference the averments contained in Paragraphs 1 through 64.

121. Plaintiff United States of America, acting through the Department of Defense and the Department of the Air Force, accepted the Centennial Estates housing units for occupancy under the factual mistake that Hunt Building Corporation had designed and constructed the housing units in compliance with all contract requirements.

122. The Air Force has made rental payments in the amount of approximately $60,000,000, through November 1998.

-25-

123. The rental payments made by the Air Force were made based upon the mistaken belief that Hunt Building Corporation had designed and constructed the Centennial Estates housing units in compliance with all contract requirements.

124. Hunt Building Corporation did not comply with the design and construction contract requirements.

125. The Air Force would not have accepted occupancy of the Centennial Estates housing units and would not have made the rental payments had it known the true facts of noncompliance by Hunt in its design and construction of the housing units.

126. Had the Air Force not accepted the occupancy of the Centennial Estates housing units, it would not have paid the monthly rental payments in an amount in excess of approximately $60,000,000 through November 1998.

127. Had the Air Force not accepted the Centennial Estates housing units upon the mistaken facts of Hunt Building Corporation's compliance with all contract requirements, Plaintiff United States of America would not have incurred various costs.

128. Because of the Air Force's mistake of fact, it has suffered significant damages.

129. As a result of the foregoing, plaintiff United States of America has paid monies to Defendants under mistake of facts, and has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America demands judgment as follows:

a. On its First and Second Claims for Relief against Defendants, for treble the amount of Plaintiff's damages to be determined at trial, and all allowable civil penalties, fees, and costs under the False Claims Act, as amended;

-26-

b. On its Third through Fifth Claims for Relief against Defendants, in the amount of the damages caused by Hunt Building Corporation's breaches of contract and warranty, prejudgment interest, the cost of the United States' investigation, fees, and costs;

c. On its Sixth Claim for Relief against Defendants in the amount of the damages caused by Hunt Building Corporation's fraud, plus punitive damages, in an amount to be determined at trial;

d. On its Seventh Claim for Relief against Defendants, in the amount of the benefit conferred upon Defendants, prejudgment interest, plus fees and costs, and a judgment declaring that those amounts are rightfully the property of the United States, and that Defendants hold said proceeds in trust for the use and benefit of the United States;

e. On its Eighth Claim for Relief against Defendants, in the amount of the damages caused by Hunt Building Corporation's negligence, prejudgment interest, plus fees and costs.

f. On its Ninth Claim for Relief against Defendants, in the amount that the United States mistakenly paid Defendants, prejudgment interest, plus fees and costs, and a judgment declaring that those amounts are rightfully the property of the United States, and that Defendants hold said proceeds in trust for the use and benefit of the United States;

g. A surcharge of ten percent (10%) of the amount of the debt in connection with the recovery of the debt in order to cover the cost of processing and handling the litigation and enforcement of the debt owed the Plaintiff, for pre-judgment and post-judgment remedies, and for any fraudulent transfers; and

h. All other relief as this Court may deem just and equitable.

PLAINTIFF UNITED STATES OF AMERICA HEREBY DEMANDS A JURY TRIAL ON

ALL ISSUES PROPERLY TRIED TO A JURY.

Dated this _20th_ day of November, 1998

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General
Civil Division

KAREN E. SCHREIER
United States Attorney

MICHAEL F. HERTZ
STEPHEN D. ALTMAN
PAUL M. HONIGBERG
Attorneys
United States Department of Justice
Civil Division
Commercial Litigation Branch
Post Office Box 261
Washington, D.C. 20044-0261
Telephone:  (202) 616-1437

_Diana Ryan, AUSA, for_

JOHN O. HOLM
Assistant United States Attorney
Post Office Box 5073
Sioux Falls, South Dakota 57117-5073
Telephone:  (605) 330-4401 Ext. 111

Attorneys for Plaintiff United States of America

OF COUNSEL:

Captain Stacie A. Vest
Assistant Staff Judge Advocate
Special Assistant United States Attorney
Department of the Air Force

-28-

**Headquarters 28th Bomb Wing (ACC)**
**28 BW/JA**
**Ellsworth AFB, S.D. 57706-4700**
**Telephone:  (605) 385-2342**